UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____

| | | |
|---|---|---|
| ARMIN WALKER, on behalf of himself and all others similarly situated (*lead case*), | : | No. 3:14-cv-01406 (MPS) |
|     MARK HALSTROM, | : | |
|     on behalf of himself and | : | No. 3:14-cv-01407 (MPS) |
|     all others similarly situated (*member case*), | : | |
|     ANDREW POST, | : | |
|     on behalf of himself and | : | No. 3:14-cv-01409 (MPS) |
|     all others similarly situated (*member case*), | : | |
|     SHIVA STEIN, | : | |
|     on behalf of herself and | : | No. 3:14-cv-01410 (MPS) |
|     all others similarly situated (*member case*), | : | |
|     KIMBERLY LINNEMEYER, | : | |
|     on behalf of herself and | : | No. 3:14-cv-01438 (MPS) |
|     all others similarly situated (*member case*), | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BOLT TECHNOLOGY CORPORATION, | : | |
| RAYMOND M. SOTO, MICHAEL HEDGER, | : | |
| JOSEPH ESPESO, KEVIN CONLISK, | : | |
| MICHAEL FLYNN, GEORGE KUBARECK, | : | |
| STEPHEN RYAN, PETER SICILIANO, | : | |
| GERALD SMITH, TELEDYNE | : | |
| TECHNOLOGIES INCORPORATED, | : | |
| LIGHTNING MERGER SUB, INC., | : | |
| Defendants. | : | November 3, 2014 |
| | : | |

_____

## RULING AND ORDER REMANDING CASES

### I.    Introduction

This ruling addresses whether this Court has subject matter jurisdiction over five consolidated cases, all of which were removed from state court and seek to challenge a proposed corporate merger: *Walker v. Bolt Tech. Corp. et al.* (14-cv-1406), *Halstrom v. Bolt Tech. Corp. et al.* (14-cv-1407), *Post v. Bolt Tech. Corp. et al.* (14-cv-1409), *Stein v. Bolt Tech. Corp. et al.*

(14-cv-1410), and *Linnemeyer v. Bolt Tech. Corp. et al.* (14-cv-1438). The cases were consolidated because they raise nearly identical claims against the same defendants. The Plaintiffs, each a shareholder of Bolt Technology Corporation ("Bolt") who proposes to represent a class of such shareholders, have alleged that the members of Bolt's Board of Directors breached their fiduciary duties in connection with a merger agreement with Teledyne Technologies Incorporated ("Teledyne") under which Bolt would become a wholly owned subsidiary of Teledyne. They also allege that Teledyne, along with its wholly owned subsidiary Lightning Merger Sub, Inc. ("Merger Sub"), aided and abetted the Bolt directors' violations of fiduciary duties. Four plaintiffs (all except Linnemeyer) also filed a Motion for Temporary Restraining Order on October 15, 2014, asking the Court to enjoin a vote of Bolt shareholders scheduled for November 17, 2014  [Dkt. #27].

After removal, the cases were consolidated before this Court, and this Court instructed the Plaintiffs to file an Amended Complaint pleading their claims in a single document. The Plaintiffs have done so [Dkt. #61], with the exception of Linnemeyer, who has objected to the consolidation. Because, for reasons explained below, the Court finds it necessary to consider the Original Complaints and the Amended Complaint in this ruling, it need not address Linnemeyer's objection.

On October 20, 2014, the Court ordered Defendants to show why the cases should not be remanded to state court [Dkt. #53]. The Defendants argue that the cases are removable on three grounds: (1) as securities fraud class actions under the removal provision of the Securities Litigation Uniform Standards Act ("SLUSA"); (2) as class actions with minimal diversity under the Class Action Fairness Act ("CAFA") and the corresponding removal provision set forth at 28 U.S.C. § 1453; (3) as a case "arising under" federal law, per 28 U.S.C. § 1331, because the

claims, although brought under state law, incorporate issues of federal law. For the reasons that follow, the Court finds that none of those bases of federal jurisdiction applies to the consolidated cases. Removal was therefore improper, and the cases must be remanded to state court.[1] 28 U.S.C.A. § 1447(c).

## II.     Discussion

### A.     The Operative Complaint(s)

Removal jurisdiction is generally assessed as of the time of removal, which makes the Original Complaints the proper focus of the removal inquiry here. *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009) ("[T]he existence of federal subject matter jurisdiction over an action removed from state court to federal court is normally to be determined as of the time of removal."). Nonetheless, a post-removal amendment to a complaint may supply jurisdiction—properly understood as original jurisdiction rather than removal jurisdiction—that was previously lacking. *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 185 (7th Cir. 1984) (even where removal was improper, jurisdiction existed because plaintiff "filed an amended complaint in federal court that included an unmistakable federal cause of action" and voluntarily "decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint"), *cited favorably in Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 56 (2d Cir. 1996). Furthermore, a post-removal amendment does not defeat jurisdiction over a properly removed case. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 n.6 (2007) ("[W]hen a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat

---

[1] For the remainder of the ruling, the Court refers to the consolidated "cases" as a single "case," for simplicity's sake.

jurisdiction."). It is, therefore, necessary to examine both the Original Complaints and the Amended Complaint to determine whether this Court has jurisdiction.

It is not, however, necessary to examine the proposed amended complaint that the Plaintiffs (except Linnemeyer) attached as an exhibit to their Motion for Temporary Restraining Order—which was filed after the Original Complaints but before the Amended Complaint [Dkt. #27]. If the Court had jurisdiction when the case was removed, then, as noted, the allegations set forth in subsequent pleadings would not defeat jurisdiction. If the Court did not have jurisdiction when the case was removed, then the Plaintiffs were allowed to add a claim that would bring the case within the Court's original jurisdiction. As shown below, they chose not to do this. *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 216 n.7 (2d Cir. 2012) ("Plaintiffs, as masters of their complaint, are always free to choose the statutory provisions under which they will bring their claims."). The fact that Plaintiffs at one point briefly contemplated—but ultimately decided against—filing an amendment that would have added a distinct federal securities claim as a new Count III does not evince an intent to bring this action within the original jurisdiction of this Court. The word "proposed" is slapped on every page of the document attached to the Motion for Temporary Restraining Order—on which the Court has taken no action—and that document was never filed as a complaint. Instead, only eight days after the document was attached as an exhibit to Plaintiffs' TRO papers, Plaintiffs filed an amended complaint that did not include a distinct federal securities claim or, as shown below, otherwise fall within this Court's jurisdiction.[2]

B. SLUSA

---

[2] Even if the proposed amended complaint had actually been filed, it is not clear that the Plaintiffs would be *immediately* prohibited from eliminating the basis of jurisdiction by amending again soon after. The principles of estoppel and finality underlying the rule from the *Bernstein* case, 738 F.2d 179, depend on the timing of the amendment conferring jurisdiction. *See In re Methyl Tertiary Butyl Ether (""MTBE"") Products Liab. Litig.*, 510 F. Supp. 2d 299, 307-08 (S.D.N.Y. 2007).

SLUSA provides this Court with removal jurisdiction for a specific purpose: to dismiss certain securities fraud cases brought under state law as class actions in state court. *See Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 (2006). If SLUSA does not preclude a case (requiring this Court to dismiss it), then the case cannot be removed. *Id.* Because SLUSA does not preclude the Plaintiffs' claims in this case, SLUSA also cannot provide this Court with removal jurisdiction over the case.

SLUSA precludes certain class actions based upon state law alleging misrepresentation, omissions, manipulation, and deception "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). Specifically exempted from that preclusion bar, however, are such actions falling within the so-called "Delaware carve-out," that is, actions that

> [i]nvolve[]—(I) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer; or (II) any recommendation, position, or other communication with respect to the sale of securities of an issuer that—(aa) is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and (bb) concerns decisions of such equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights,

*id.* § 78bb(f)(3).

A founding purpose of SLUSA was to require that certain securities class action fraud claims be brought under federal law and thereby face the stringent pleading and procedural standards of the Private Securities Litigation Reform Act, 15 U.S.C. §§ 77z-1, 78u-4 ("PSLRA")—standards they might avoid if brought solely under state law. *Romano v. Kazacos*, 609 F.3d 512, 517 (2d Cir. 2010) ("[After enactment of the PSLRA, which tightened pleading and other standards for securities fraud class actions,] plaintiffs began circumventing its restrictions by filing federal securities fraud class actions in state court, where they could assert many of the same causes of action while avoiding the PSLRA's requirements, which apply in

5

federal court. In an effort to curb these perceived, new abuses, Congress enacted SLUSA in 1998.") (internal citations and footnote omitted). To effectuate this purpose, courts apply "the artful pleading rule," under which they "look beyond the face of the [complaint] to determine whether [plaintiffs] allege securities fraud in connection with the purchase or sale of covered securities." *Id.* at 519.

Contrary to Defendants' suggestions, however, the artful pleading rule does not transform every state law claim that touches upon the handling of securities into a SLUSA-precluded claim. Here, the Original Complaints and the Amended Complaint all plead claims that are nothing more than state law fiduciary duty claims, specifically, claims that the members of Bolt's Board have violated their fiduciary duties to Bolt's stockholders in connection with a proposed merger and that Teledyne and Merger Sub have aided and abetted those violations. *See, e.g.,* Walker Compl. Counts I and II; Am. Compl. Counts I and II. The factual allegations in the Original Complaints—and the bulk of those in the Amended Complaint—set forth the classic theories of breach of fiduciary duty that often attend challenges to a corporate board's consideration of a potential merger or tender offer: that the Board decided to sell a company with promising prospects for inadequate consideration, that it engaged in a flawed sales process, that the merger agreement unfairly deters competitive offers and contains "onerous and preclusive deal protection devices," such as anti-solicitation provisions and an excessive termination fee, and that many of the defendants stand to benefit from the proposed merger and thus have put their own financial interests ahead of those of shareholders. *See, e.g.,* Walker Compl. ¶¶ 53, 59, 63; Am. Compl. ¶¶ 60, 61, 77, 78, 85. None of these allegations comes close to falling within SLUSA.

The only possible language in the Original Complaints that might conceivably expose them to SLUSA preclusion is a fleeting reference to "federal securities laws," contained in a single clause set forth in the class allegations, *see* Walker Compl. ¶ 30(d) ("Whether the Individual Defendants violated the federal securities laws."), and a conclusory recitation of the fiduciary duty of disclosure in two of the complaints, *see* Stein Compl. ¶ 55(f); Post Compl. ¶ 66(e). Unsupported by a single factual detail or statutory reference, these conclusory references are "extraneous detail[s]" and not "factual predicate[s] for any of the claims" and therefore not a proper basis for SLUSA jurisdiction. *Tuttle v. Sky Bell Asset Mgmt.*, LLC, No. C 10-03588 WHA, 2011 WL 208060, at *2 (N.D. Cal. Jan. 21, 2011). And, even if construed as a factual allegation, the recitation of the fiduciary duty of disclosure would fall within the Delaware carve-out, as shown below . *See, e.g.*, *Indiana Elec. Workers Pension Trust Fund v. Millard*, No. 07 CIV. 172 JGK, 2007 WL 2141697, at *4 (S.D.N.Y. July 25, 2007); *Alessi v. Beracha*, 244 F. Supp. 2d 354, 359 (D. Del. 2003).

Defendants make much of the fact that Part F of the Amended Complaint adds allegations that several misrepresentations and omissions were made in Bolt's proxy statement filed on September 17, 2014, in connection with the proposed merger. Because of the artful pleading rule, they argue, these allegations give rise to federal jurisdiction under SLUSA, even though the allegations are contained within a fiduciary duty claim brought under state law. *See In re Stillwater Capital Partners Inc. Litig.*, 853 F. Supp. 2d 441, 458 n.144 (S.D.N.Y. 2012) (finding that where a "proxy statement sought plaintiffs' approval of a merger" a "connection with the purchase or sale of any security" had been demonstrated); *Rabin v. JPMorgan Chase Bank, N.A.*, No. 06 C 5452, 2007 WL 2295795, at *6 (N.D. Ill. Aug. 3, 2007) (finding allegations of securities fraud beneath the surface of a fiduciary duty claim).

There are two problems with this argument. First, SLUSA provides for removal jurisdiction, not original jurisdiction, and, as noted above, the determination of removal jurisdiction here focuses on the Original Complaints, not the Amended Complaint. While allegations in a post-removal amendment might bring a case within the Court's original jurisdiction (an issue discussed below), it cannot supply the Court with removal jurisdiction, which is assessed as of the time of removal and which is the only type of jurisdiction SLUSA affords.

Second, even if this were not the rule, the allegations that Bolt's proxy statement contained misleading disclosures about the proposed merger would fall squarely within SLUSA's "Delaware carve-out" and therefore could not remain in federal court. *See, e.g.*, *Weitman v. Tutor*, 588 F. Supp. 2d 133, 139 (D. Mass. 2008); *Indiana Elec. Workers Pension Trust Fund v. Millard*, No. 07 CIV. 172 JGK, 2007 WL 2141697, at *1 (S.D.N.Y. July 25, 2007); *Alessi v. Beracha*, 244 F. Supp. 2d 354, 359 (D. Del. 2003); *Lazar v. Gregerson*, No. C 02-0652 SI, 2002 WL 535405, at *4 (N.D. Cal. Apr. 8, 2002).  Indeed, the allegations concerning the proxy statement in the Amended Complaint come close to tracking the very terms of the Delaware carve-out.  *Compare* Am. Compl. ¶ 8 ("Specifically, the Proxy Statement, in violation of the Board's duty of candor under state law, fails to provide material information and provides [Bolt's] stockholders with materially misleading information *thereby rendering stockholders unable to make an informed decision on whether to vote in favor of the Proposed Transaction* at the November 17, 2014 special meeting of Bolt stockholders.") (emphasis added) *with* 15 U.S.C. § 78bb(3)(A)(ii)(II) (carving out of SLUSA preclusion bar a "covered class action" based upon the law of the issuer's State of incorporation that involves "any recommendation, position, or other communication with respect to the sale of securities of an

8

issuer that (aa) is made by on or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer; and (bb) *concerns decisions of such equity holders with respect to voting their securities, including in response to a tender or exchange offer*, or exercising dissenters' or appraisal rights") (emphasis added).

    C.    CAFA

CAFA likewise does not provide the Court with jurisdiction over this case because it, too, contains a carve-out that fits the allegations in this case. CAFA's liberal rules for diversity jurisdiction do not apply to class actions that "solely involve[] a claim . . . that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security." 28 U.S.C. § 1332(d)(9)(C). This CAFA exception has been interpreted to include claims that depend on "superimposed" state fiduciary law, beyond the text of securities agreements themselves. *BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assur. Corp.*, 673 F.3d 169, 179 (2d Cir. 2012) ("[D]uties superimposed by state law as a result of the relationship created by or underlying the security fall within the plain meaning of the statute, which expressly references 'duties (including fiduciary duties).'"). In *Black Rock*, the Second Circuit cited *Rubin v. Mercer Ins. Grp., Inc.*, 2011 U.S. Dist. LEXIS 15181 (D.N.J. Feb. 15, 2011)—a case that involves facts similar to those here and in which the district court remanded fiduciary duty claims brought by shareholders against an issuer—in its discussion of situations involving "duties and obligations [that] 'relate to' securities [and] are superimposed by a state's corporation law or common law on the relationships underlying [a corporate document]." 673 F.3d at 179.

Both in the Original Complaints and in the Amended Complaint, the Plaintiffs have brought only claims related to breach of fiduciary duties under state law,[3] arising from their status as holders of Bolt securities. Under those circumstances, CAFA does not provide federal jurisdiction. *See, e.g.*, *Rubin*, 2011 U.S. Dist. LEXIS 15181; *Indiana State Dist. Council of Laborers & Hod Carriers Pension Fund v. Renal Care Goup, Inc.*, No. CIV. 3:05-0451, 2005 WL 2000658, at *1 (M.D. Tenn. Aug. 18, 2005); *In re Textainer P'ship Sec. Litig.*, No. C 05-0969 MMC, 2005 WL 1791559, at *7 (N.D. Cal. July 27, 2005).

Contrary to the Defendants' contention, the fact that the Amended Complaint contains allegations about disclosures does not mean that the complaint is no longer "solely" about fiduciary duties. The Plaintiffs have included those allegations as part of their claim for breach of fiduciary duties, and the allegations certainly "relate[] to" Bolt's fiduciary duties. 28 U.S.C. § 1332(d)(9)(C). There is no reason for the Court to treat those allegations as somehow outside the fiduciary duty claim, especially where the Plaintiffs have pled them under that claim. The "artful pleading rule" has not, as far as the Court is aware, been applied to CAFA, which provides a species of diversity jurisdiction. *See Romano*, 609 F.3d at 519 ("The artful pleading rule applies when Congress has either (1) so completely preempted, or entirely substituted, a federal law cause of action for a state one that plaintiff cannot avoid removal by declining to plead necessary federal questions, or (2) expressly provided for the removal of particular actions asserting state law [such as under the Price-Anderson Act, 42 U.S.C. Sec. 2014(hh) (tort actions arising out of nuclear accidents), and SLUSA].").

---

[3] The claims that Teledyne and Merger Sub aided and abetted the breach of fiduciary duties certainly fall within the realm of claims that "relate[] to" fiduciary duties. *Rubin v. Mercer Ins. Grp., Inc.*, No. CIV.A. 10-6816 MLC, 2011 WL 677466, at *4 (D.N.J. Feb. 15, 2011), *cited favorably in BlackRock Fin. Mgmt. Inc. v. Segregated Account of Ambac Assur. Corp.*, 673 F.3d 169, 179 (2d Cir. 2012).

D. Federal Question Jurisdiction

Finally, the Court does not have jurisdiction over the case as a "civil action[] arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In neither the Original Complaints nor the Amended Complaint have the Plaintiffs pled a federal cause of action.  It does not matter that the misrepresentation claims in the Amended Complaint *could* be pled under federal securities law, in addition to the state law that the Plaintiffs actually rely on. *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998) (plaintiffs are "free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available").

The Plaintiffs' case therefore arises under federal law only if their state law claims "*necessarily* raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (emphasis added). Although an allegation that the Defendants violated federal securities laws through Bolt's proxy statement could be one *theory* as to how Defendants breached their fiduciary duties, it is one of several theories and is thus not necessarily raised by the Plaintiffs' claims—a point underscored by the additive language in which the allegation regarding the proxy statement is couched in the Amended Complaint. *See* Am. Compl. ¶ 8 ("*Exacerbating* the unfairness of the Proposed Transaction, the Individual Defendants issued a materially incomplete and misleading Definitive Proxy Statement filed on Schedule 14A with United  States [S]ecurities and Exchange Commission ….") (emphasis added);  *see Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) ("Where a federal issue is present as

11

only one of multiple theories that could support a particular claim, however, this is insufficient to create federal jurisdiction.").[4]

### III. Conclusion

At its core, this case raises questions about whether corporate board members discharged their fiduciary duties in vetting a proposed merger. Those questions fall squarely within the wheelhouse of the state courts and implicate no federal interest—as Congress recognized in the SLUSA and CAFA carve-outs. While Plaintiffs have added a dash of allegations that might also ground a federal law claim, those allegations do not change the overall flavor of this case as one falling outside this Court's jurisdiction.  All five consolidated cases are hereby remanded to Connecticut Superior Court.

A final matter remains. Plaintiffs have asked this Court to impose costs and fees upon Defendants under 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses."). While the Court has some concern about the possibility that the removal process might be used to delay consideration of the fiduciary duty claims beyond the November 17, 2014 shareholders meeting that Plaintiffs seek to enjoin, and has thus done its best to expedite this ruling, the Court nonetheless declines to impose fees and costs. Given the complexity of the issues involved, as well as the comparatively limited case law defining the precise scope of the SLUSA and CAFA exceptions, the Defendants were not without any "objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).

---

[4] The Second Circuit's recent opinion in *NASDAQ OMX Group, Inc. v. UBS Securities*, LLC, 13-2657-cv (2d Cir. Oct. 31, 2014) does not help the Defendants, as it adheres to the necessity requirement of *Grable* and *Broder*. *NASDAQ OMX Group, Inc.*, Slip Op. at 25-26 ("Thus, although UBS's claims for relief may invoke state law of contract and tort, the duty on which these claims turn—and their particular scope as it pertains to UBS in participating in the Facebook IPO—*necessarily* raises disputed issues of federal securities law.") (emphasis added). As shown, the necessity requirement is not satisfied in this case.

**SO ORDERED** this 3rd day of November, 2014, at Hartford, Connecticut.

                                          _____
                                          Michael P. Shea
                                          United States District Judge